Rebecca Horne, #16846
**LawHQ, LLC**
299 S. Main St. #1300
Salt Lake City, UT 84111
Telephone: (385) 233-6612 ext. 3152
Email: rhorne@lawhq.com

*Attorney for Plaintiff*

---

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION
### 351 S. West Temple, Salt Lake City, UT  84101

| | |
|---|---|
| **Karissa Kenney**, an individual;<br><br>Plaintiff,<br><br>v.<br><br>**JOHN DOES 1-20,**<br><br>Defendants. | **VERIFIED COMPLAINT**<br><br>**Demand for Jury Trial**<br><br>Civil No. 2:2019-cv-00882<br>Magistrate Judge Cecilia M. Romero |

## Introduction

Karissa Kenney ("Plaintiff") brings this action seeking to enforce Plaintiff's right to privacy under the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The TCPA is a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. See *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). The legislative history of the

bills' inception shows how seriously Congress took the people's mandate to protect their privacy, calling robocalls "the scourge of modern civilization," and stating that "[c]onsumers around the country are crying out for Congress to put a stop to these [calls.]"  Senator Hollings (SC), "Automated Telephone Consumer Protection Act," *Congressional Record*, 137 Cong. Rec. at S16205 (November 7, 1991)1991 WL 229525. Available from Westlaw, last accessed on October 16, 2019.

Defendant blatantly violated the TCPA by using an automatic dialing system, or "ATDS," to make telemarketing calls to Plaintiff's cellular telephone number for the purposes of advertising its goods and services. This type of contact is expressly prohibited by law. Further violating the TCPA, Further violating the TCPA, Defendant made multiple calls to Plaintiffs despite Plaintiffs' presence on the National Do Not Call Registry, and without maintaining internal do not call procedures as required by law. Lastly, many of the text messages violated the Utah Truth In Advertising Act.

Plaintiff has standing under the TCPA to bring this action before the Court, which Plaintiff now does, and respectfully requests relief.

## I.        Jurisdiction and Venue

1.        This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Defendant because they conducted a significant amount of business in this District, solicited consumers in this District, and sent and continue to send unsolicited text messages in this District.

2.      This Court also has supplemental jurisdiction over the claims asserted by Plaintiff under the Utah Truth in Advertising Act because the claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367.

3.      Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducted a significant amount of business within this District and marketed to this District.

## II.      Statement of Facts Common to All Claims

4.      Plaintiff is a resident of Orem, Utah.

5.      Plaintiff's telephone number 801-787-9750 is registered to a cellular telephone service.

6.      Plaintiff's telephone number has been on the National Do Not Call Registry since January 11, 2006.

7.      Defendant has texted Plaintiff at least 119 times since she was added to the National Do Not Call Registry. Ten instances are recorded below. A full list of the 119 messages are attached as Exhibit A. *See* Exhibit A.

a.   From 855-909-1582, To 801-787-9750, On 10/21/19, 2:06 PM, "Good Morning! Julia here. I think we have something that may interest you. Check it out Here: http://txt.hn/JQWONh"

b.   From 855-909-1582, To 801-787-9750, On 10/21/19, 2:06 PM, "Reply STOP to unsubscribe or HELP for help. If you never subscribed to msgs from DataInt, please reply REPORT. Msg&Data rates may apply."

    c.   From 55702, To 801-787-9750, On 6/26/19, 6:00 PM, "New Transfer Limit: Your Account has been Upgraded with a New Limit. Fast Processing. Click Here to View: http://370.bz/3/03V1-106V49 P.S. Transfer Expires Soon!"

    d.   From 55702, To 801-787-9750, On 7/10/19, 3:25 PM, "E-Sign Your Request: Your Account is waiting, one last step! Select Your New Transfer Amount Here: http://370.bz/3/043E-106V49 P.S. Offer Expires Soon!"

    e.   From 55702, To 801-787-9750, On 7/15/19, 3:22 PM, "Hey, Trevor here from BillFloat Account Services . You Have a New Transfer Opportunity. Click Now: http://370.bz/3/045D-106V49 P.S. Transfer Expires Soon!"

    f.   From 55702, To 801-787-9750, On 7/19/19, 12:22 PM, "ClicknGo Alert: Select and E-Sign funds today! You Still Have Time. Accept Here: http://370.bz/3/049G-106V49 P.S. Link Expires Soon."

    g.   From 55702, To 801-787-9750, On 7/25/19, 12:04 PM, "Hello, Katherine here from BilFloat Alerts. We Think You are going to be happy with this. Process Here: http://370.bz/3/04DN-106V49 P.S. This Link Expires Soon!"

    h.   From 55702, To 801-787-9750, On 7/29/19, 12:46 PM, "E-Sign Required: Your Confirmation at WalletBoost is Required for Transfer. View Here: http://370.bz/3/04FP-106V49 P.S. Online & Processing Today"

    i.   From 55702, To 801-787-9750, On 7/31/19, 12:23 PM, "Hello, Kelly here from BillFloat Alerts. We Think You are going to be happy with this. Process Here: http://370.bz/3/04J0-106V49 P.S. Online & Processing Today"

     j.   From 55702, To 801-787-9750, On 8/2/19, 5:41 PM, "Hello, Mikey here from ClicknGo Alerts. We Think You are going to be happy with this. Process Here: http://370.bz/3/04M0-106V49 P.S. Offer Expires Soon!"

8.     Plaintiff told Defendant to stop texting her on multiple occasions, which include the following:

     a.   On September 4, 2019, Plaintiff messaged 46701: "I never consented to receive these messages. Do not send me any more messages."

     b.   On September 4, 2019, Plaintiff messaged 55702: "I never consented to receive these messages. Do not send me any more messages."

     c.   On September 4, 2019, Plaintiff messaged 52281: "I never consented to receive these messages. Do not send me any more messages."

     d.   On October 18, 2019, Plaintiff messaged 46701: "Stop"

     e.   On October 18, 2019, Plaintiff messaged 5702: "Stop"

     f.   On October 18, 2019, Plaintiff messaged 52281: "Stop"

9.     All 119 messages sent to Ms. Kenney were sent by Defendants without internal do not call procedures as required by 47 C.F.R. § 64.1200(d), as evidenced by Defendants' failure to respond to Ms. Kenney's repeated requests to stop receiving text messages.

10.     One hundred eighteen (118) of the 119 messages sent to Ms. Kenney were deceptive, misleading, or false.

11.     Defendant's text messages were for the purpose of telemarketing and soliciting business.

12.     Plaintiff has so far been unable to ascertain the identity of the telemarketer sending these text messages. Plaintiff has identified phone carriers, domain registrars, and/or third parties who have discoverable information related to the identity of the telemarketer. Subpoenas to these parties should reveal the identity of the telemarketer.

13.     Defendant knowingly and willfully sent the text messages to Plaintiff via an ATDS, as defined by 47 U.S.C. § 227(a)(1), which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.

14.     The text messages sent by Defendant are typical of messages sent using an ATDS because: (i) the text messages were not personalized; (ii) the text messages were sent from many different numbers instead of one number; (iii) one of the text messages read "Reply STOP to unsubscribe or HELP for help"; (iv) Plaintiff's requests to stop the texts received no response and the messages continued to be sent; (v) Defendant has messaged Plaintiff with a high frequency and volume of texts; and vi) the numbers which Defendant used to text Plaintiff are provided by Truedialog.com, which is a carrier that allows its users to send mass text messages to many users at once.

15.     These text messages were sent either by (i) Defendant, or (ii) by a third party for whom Defendant is vicariously liable because the messages were made for the benefit of Defendant and Defendant had the right control, the ability to control, or otherwise could and should have controlled the actions of the third party.

16.     At all times relevant, Defendant purposefully availed itself of the benefits and protections of Utah law, as well as conducted business in the State of Utah and in the County of Utah within this judicial district.

17.     Defendant knowingly and willfully sent the text messages without establishing or implementing, with due care, practices and procedures to effectively prevent telemarketing calls to phone numbers on the Do Not Call Registry, including Plaintiff's phone number.

18.     Plaintiff is neither a subscriber nor client of Defendant, has never contacted Defendant, and has never provided Defendant with Plaintiff's personal information or cellular telephone number. Thus, at no time did Plaintiff provide Defendant or Defendant's agents with prior express written consent to receive unsolicited text messages, pursuant to 47 U.S.C. § 227(b)(1)(A).

19.     By texting Plaintiff, Defendant harmed Plaintiff in the exact way that Congress sought to prevent by enacting the TCPA.

20.     Plaintiff has suffered (i) lost time in receiving and reviewing the unsolicited text messages, (ii) an annoyance and nuisance, and (iii) an invasion of privacy.

### III.     Legal Standard

#### A.     *The Telephone Consumer Protection Act*

21.     In 1991,  Congress passed the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

can be an intrusive invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L.

No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

### i.     The National Do Not Call Registry

22.     Congress, via the TCPA, authorized a rulemaking proceeding to explore how to

best "protect residential telephone subscribers' privacy rights." 47 U.S.C. § 227(c)(1).

23.     The end result of the rulemaking proceeding was the creation of the National Do

Not Call Registry ("Registry"). The Registry is a single national database of telephone numbers

for consumers who object to receiving telephone solicitations. Telephone solicitations to

numbers on the Registry are prohibited. 47 C.F.R. §64.1200(c)(2).

24.     The resulting regulations also require telemarketers to "institute[] procedures for

maintaining [an internal] list of persons who request not to receive telemarketing calls" and to

honor those requests. 47 C.F.R. §64.1200(d).

### ii.     Prohibitions on Automated, Artificial, and Prerecorded Telemarketing Calls

25.     The TCPA also makes it unlawful "to make any call (other than a call made for

emergency purposes or made with the prior express consent of the called party) using an

automatic telephone dialing system or an artificial or prerecorded voice … to any telephone

number assigned to a … cellular telephone service."  *See* 47 U.S.C. § 227(b)(1)(A)(iii).

26.     The TCPA also makes it unlawful "to make any call (other than a call made for

emergency purposes or made with the prior express consent of the called party) using an

automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

27.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

28.     This statutory definition of an ATDS has been read to mean "equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. Sep. 20, 2018).

29.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶165 (July 3, 2003).

30.     In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express **written** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1838 [8] ¶¶18, 20 (February 15, 2012) (emphasis supplied).

31.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent. . . . [and] having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *Id* at 1843 [13] ¶32 (citing the FTC's rules for telemarketing calls, codified at 16 C.F.R. § 310.4(b)(v)(A)(i), (iii), (iv).

32.     The TCPA regulations promulgated by the FCC define "telemarketing" as  the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).

33.     In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. See *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

34.     "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores*, L.P., 705 F.3d 913, 918 (9th Cir. 2012)).

35.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. *Id*.

36.    If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (July 10, 2015) (requiring express consent "for non-telemarketing and non-advertising calls").

37.    The FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009).

### iii.    Vicarious Liability

38.    For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA,* 10 FCC Rcd 12391, 12397 (¶ 13) (August 7, 1995).

39.    In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 23 FCC Rcd. 559, 564 (January 4, 2008).In fact, on May 9, 2013 the Federal Communications Commission instructed that Defendants may not avoid liability by outsourcing telemarketing to unsupervised third parties:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to

> judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6588 ¶37 (2013).

40.    The FCC clarified that a corporation or other entity that contracts out its telephone marketing is "vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574. This includes liability not only under principles of "formal agency, but also principles of apparent authority and ratification." *Id.* at 6584.

41.    The FCC clarified that a corporation or other entity that contracts out its telephone marketing is "vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574. This includes liability not only under principles of "formal agency, but also principles of apparent authority and ratification." *Id.* at 6584.

42.    The FCC further noted that "nothing in our ruling requires a consumer to prove at the time of their complaint (rather than reasonably allege) that a call was made on the [Defendant's] behalf," and that "consumers may acquire [this information] through discovery." *Id.* at 6593.

### iv.    *Individual Officer Liability*

43.     Under the TCPA, an individual may be personally liable pursuant to 47 U.S.C. §

217, which reads, inter alia:

> [T]he act, omission, or failure of any officer, agent, or other person acting
> for or employed by any common carrier or user, acting within the scope of his
> employment, shall in every case be also deemed to be the act, omission, or failure
> of such carrier or user as well as of that person.

47. U.S.C. § 217.

44.     To violate the TCPA is to commit a tort, and a "corporate officer is individually

liable for the torts he personally commits and cannot shield himself behind a corporation when

he is an actual participant in the tort." *Donsco, Inc. v. Casper Corp.*, 587 F. 2d 602 (3d Cir.

1978).

45.     When considering individual officer liability, Courts have agreed that a corporate

officer involved in the telemarketing may be personally liable under the TCPA. *See*, e.g., *City*

*Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, (3d Cir. 2018) ("[A]

corporate officer can face personal liability under the TCPA for actions he personally authorized

or took.") (J. Schwartz, concurring in the majority opinion, which read: "a corporate officer can

be personally liable [under the TCPA] if he . . . actively oversaw and directed the conduct.");

*Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich.

Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for

violating the TCPA "where they 'had direct, personal participation in or personally authorized the

conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d

408, 415–16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**v.     Standing Under the TCPA**

46.     The TCPA provides two separate private rights of action under 227(b) and 227(c). *See* 47 U.S.C. § 227(b)(3); 47 U.S.C. § 227(c)(5).

47.     First, under § 227(b), there is a private right of action for persons who receive automated, artificial, or prerecorded calls in violation of 47 U.S.C. § 227(b)(1)(A).  See 47 U.S.C. § 227(b)(3).

48.     Second, under § 227(c), there is a private right of action for persons (i) whose phone numbers are on the Registry that receive "more than one telephone call within any 12-month period by or on behalf of the same entity," or (ii) who are contacted by an entity which has failed to institute and maintain internal do not call procedures. See 47 U.S.C. § 227(c)(5), 47 C.F.R. 64.1200(d).

49.     In an action under the 227(b), a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

50.     A plaintiff alleging a violation under the TCPA "need not allege any additional harm beyond the one Congress has identified." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)).

51.     The receipt of a telemarketing or unsolicited call "demonstrates more than a bare violation and satisfies the concrete-injury requirement for standing." *Leyse v. Lifetime Entm't Servs., LLC*, Nos. 16-1133-cv, 16-1425-cv, 2017 U.S. App. LEXIS 2607 (2d Cir. 2017) (citing *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 105 (2d Cir. 2013) ("The injury-in-fact necessary for standing need not be large; an identifiable trifle will suffice."); *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 819-21 (8th Cir. 2015) (holding that receipt of two brief unsolicited robocalls as voicemail messages was sufficient to establish standing under TCPA).

**B.     *Truth In Advertising Act***

52.     The Truth In Advertising Act ("TIAA") prohibits "deceptive, misleading, and false" advertising. UTAH CODE § 13-11a-1. Examples of prohibited advertising practices are enumerated in UTAH CODE § 13-11a-3.

53.     This prohibition extends to "any written, oral, or graphic statement or representation made… in connection with the solicitation of business." *Id.* at 13-11a-2(1).

54.     The statute provides a private right of action for violations of the TIAA, with $2,000 in damages per violation, as well as providing for an award of costs and attorney's fees to the prevailing party. *Id.* at 13-11a-4(2).

## IV.     First Cause of Action
### Illegal Use of an ATDS, Artificial Voice, or Prerecorded Message

55.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

56.     The Defendant's use of an ATDS to contact Plaintiff constitutes a violation of 47 U.S.C. § 227(b).

57.     As a result of Defendant's negligent violations of 47 U.S.C. § 227(b), Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every violation,  pursuant to 47 U.S.C. § 227(b)(3)(B).

58.     As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

59.     Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

### V.     Second Cause of Action:
### Illegal Solicitation of Persons on the National Do Not Call Registry
### or, Alternatively, Illegal Solicitations of Persons on the National Do Not Call Registry

60.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

61.     The Defendant's contacting of Plaintiff's cellular phone number on the National Do Not Call Registry constitutes a violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

62.     As a result of Defendant's negligent violations of 47 U.S.C. § 227(c) and 47

C.F.R. § 64.1200(c)–(d), Plaintiff is entitled to an award of $500.00 in statutory damages, for

each and every violation,  pursuant to 47 U.S.C. § 227(c)(5)(B).

63.     As a result of Defendant's knowing and/or willful violations of 47 U.S.C. §

227(c) and 47 C.F.R. § 64.1200(c)–(d), Plaintiff is entitled to an award of $1,500.00 in statutory

damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B) and 47 U.S.C. §

227(c)(5)(C).

> "The fact that the [TCPA] includes separate provisions for statutory
> damages in subsections (b) and (c) suggests that a plaintiff could recover under
> both.... Additionally, the two private-right-of-action provisions contain
> significant textual differences, indicating that they are distinct provisions to be
> treated independently.... The two subsections, moreover, target different harms....
> By enacting separate private-right-of-action provisions, each including a
> statutory damages provision, Congress evidenced its intent that a person be able
> to recover for the telemarketer's failure to institute the minimum procedures for
> maintaining a do-not-call list as well as the additional harm of the call being
> automated. We therefore conclude that a person may recover statutory damages
> of $1500 for a willful or knowing violation of the automated-call requirements, §
> 227(b)(3), and $1500 for a willful or knowing violation of the do-not-call-list
> requirements, § 227(c)(5)—even if both violations occurred in the same
> telephone call."

*Charvat v. NMP, LLC*, 656 F.3d 440, 448-9 (6th Cir. 2011).

64.     Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in

the future.

## VI.     Third Cause of Action:
## Violations of the Utah Truth In Advertising Act

65.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint

as though fully stated herein.

66.     Defendant's deceptive, false, and misleading text messages constitute violations of the Truth In Advertising Act ("TIAA"). UTAH CODE § 13-11a-1 et seq..

67.     As a result of Defendant's violations of the TIAA, Plaintiff is entitled to an award of $2,000.00 in statutory damages, for each and every violation, as well as attorneys fees, pursuant to UTAH CODE § 13-11a-4(2).

## VII.    Relief Requested

68.     WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendant:

69.     As a result of Defendant's violations of 47 U.S.C. § 227(b), Plaintiff seeks an amount not less than $178,500.00.

70.     As a result of Defendant's violations of 47 U.S.C. § 227(c)–(d), Plaintiff seeks an amount not less than $178,500.00.

71.     As a result of Defendant's violations of UTAH CODE § 13-11a-1 et seq., Plaintiff seeks an amount not less than $236,000.00.

72.     Plaintiff seeks attorneys fees and costs for Defendants' TIAA violations, as authorized pursuant to UTAH CODE § 13-11a-4(2).

73.     Plaintiff seeks injunctive relief prohibiting such conduct in the future.

74.     Any other relief the Court may deem just and proper.

Date: 11/12/2019                         Respectfully submitted,

                                          /s/ *Rebecca Horne*
                                         _____
                                         Rebecca Horne
                                         Attorney for Plaintiff

I, Karissa Kenney, declare and state the following:

I have read the foregoing VERIFIED COMPLAINT, that I know the contents thereof, and that the same are true to the best of my knowledge.

Pursuant to Utah Code Ann. § 78B-5-705, I declare under criminal penalty of the State of Utah that the foregoing is true and correct to the best of my belief and knowledge.

DATED and SIGNED on 11/6/2019.


 /s/ *Karissa Kenney*
_____
Karissa Kenney
Plaintiff
*Signed with permission via email on 11/6/2019*
*By Rebecca Horne, attorney for Plaintiff*